# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS MURRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 7666 |
| ) | |
| NEW CINGULAR WIRELESS ) | Judge Ruben Castillo |
| SERVICES, INC. ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Murray ("Murray") has sued Defendant New Cingular Wireless Services[1] ("Cingular") claiming that Cingular, while doing business as AT&T, unlawfully accessed his credit report prior to sending him a promotion for wireless service. He alleges that AT&T's actions do not constitute a permissible basis to obtain a consumer report and violates the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (R. 30, Pl.'s Mot. for Class Cert. at 1.) Murray now seeks to certify a class consisting of all persons with Illinois addresses who received the promotion from AT&T on or after November 24, 2002 and before December 14, 2004. (R. 29-1.) The class would exclude those individuals who received the promotion and signed up for AT&T's wireless service. (R. 43, Pl.'s Reply at 5 n.4.)

---

[1] AT&T Wireless Services, Inc. ("AT&T") was the original defendant in this case, but the company was subsequently acquired by Cingular, which is currently named in this litigation in lieu of AT&T. (R.36, Def.'s Answer to Pl.'s Second Am. Compl. at 1.) For purposes of clarity, we refer to Defendant as AT&T when discussing events that occurred prior to the filing of this litigation.

## BACKGROUND

Murray alleges that in October 2004, AT&T sent him a promotion[2] containing the following disclosure: "You were selected to receive this special offer because you satisfied certain credit criteria for creditworthiness, which we have previously established. We used information obtained from a consumer-reporting agency. . . . You have the right to prohibit information contained in your credit files with this and any other consumer-reporting agency from being used with any credit transaction that is not initiated by you . . . ." (*Id.*, Ex. A, AT&T Solicitation.) Section 1681b of FCRA states that a consumer reporting agency may furnish consumer credit information only in certain situations, such as when the information is used for employment purposes, for the underwriting of insurance, where the consumer has authorized the release of his information, or where the transaction consists of a firm offer of credit or insurance. Murray argues that this promotion does not qualify as a "firm offer of credit" or meet any of FCRA's other permissible bases for accessing a consumer's credit report. (*Id.* at 2.) Murray further argues that even if the promotion qualifies as a firm offer of credit, the disclosure of the consumer's privacy rights in fine print on the bottom of the second page of the promotion

---

[2]AT&T mass mailed a promotion for wireless phone service. Since it is disputed whether this document constitutes a firm offer of credit, the Court will refer to it as a "promotion."

violates FCRA's requirement that the disclosure be "clear and conspicuous."[3] (*Id.* at 3.) Murray seeks statutory damages on behalf of himself and the proposed class under 1681n(a). For the following reasons, we grant Murray's motion for class certification.

## LEGAL STANDARDS

A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Jackson v. National Action Fin. Servs., Inc.*, 227 F.R.D. 284, 286 (N.D. Ill. 2005). A class may be certified if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately

---

[3] Anyone who uses consumer credit information to extend a firm offer of credit also must comply with the requirements of 1681m which reads in pertinent part:

> any person who uses a consumer report . . . shall provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement that—(A) information contained in the consumer's consumer report was used in connection with the transaction; (B) the consumer received the offer of credit or insurance because the consumer satisfied the criteria for credit worthiness [creditworthiness] or insurability under which the consumer was selected for the offer; (C) if applicable, the credit or insurance may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the consumer for the offer or any applicable criteria bearing on credit worthiness or insurability or does not furnish any required collateral; (D) the consumer has a right to prohibit information contained in the consumer's file with any consumer reporting agency from being used in connection with any credit or insurance transaction that is not initiated by the consumer; and (E) the consumer may exercise the right referred to in subparagraph (D) by notifying a notification system established under section 604(e) [15 USCS § 1681b(e)].

3

protect the interests of the class." Fed. R. Civ. P. 23(a). Failure to meet any of the requirements of Rule 23(a) precludes class certification. *Retired Chic. Police Ass'n v. City of Chic.*, 7 F.3d 584, 596 (7th Cir. 1993). Once these prerequisites are met, the potential class must also satisfy at least one provision of Rule 23(b). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). A plaintiff seeking monetary damages, as Murray does here, must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). A court has broad discretion to determine whether the proposed class has met the requirements of Rule 23. *Jackson*, 227 F.R.D. at 286.

## ANALYSIS

Murray argues that his proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3). Cingular contends that Murray has failed to satisfy his burden because the proposed class does not meet the adequacy, predominance, and superiority requirements of Rule 23. We will consider the class's suitability for certification under each prong of Rule 23.

### I.  Rule 23(a) Requirements

####  A.  Rule 23(a)(1): Numerosity

Rule 23(a) requires that a proposed class be so numerous that joinder is impractical. "'Where the class is large, the numbers alone are dispositive of the impracticability of joinder,' and the Court need not consider other factors to determine whether the numerosity requirement is met." *Wallace v. Chi. Hous. Auth.*, 224 F.R.D. 420, 427 (N.D. Ill. 2004) (*citing Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983)). Here, AT&T sent over

4

700,000 solicitations to Illinois residents. The proposed class, as defined, can consist of any or all of these individuals. Murray estimates that the class will contain approximately 733,400 individuals after excluding those individuals who signed up for wireless service. (R. 43, Pl.'s Reply at 5 n.4.) Cingular does not contest numerosity, and given the potential number of claimants, joinder is entirely impractical. *Wilson v. Collecto, Inc.*, 03 C 4673, 2004 WL 432509, *2 (N.D. Ill. Feb. 25, 2004). We find that the proposed class meets the numerosity requirement.

### B. Rule 23(a)(2): Commonality

A plaintiff must also show that there are questions of fact or law that are common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario*, 963 F.2d at 1018. "[C]laims arising out of standard documents present a 'classic case for treatment as a class action.'" *Ingram v. Corporate Receivables, Inc.*, 02 C 6608, 2003 WL 21982152, *3 (N.D. Ill. Aug. 19, 2003) (*citing Haroco, Inc. v. Am. Nat'l Bank & Trust Co. Chic.*, 121 F.R.D. 664, 668 (N.D. Ill. 1998)); *Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D. Ill. 1998). In this case, AT&T sent identical solicitations to each potential class member. The central issue common to all potential classmates is whether AT&T violated FCRA in screening the credit of the individuals who received its solicitation. Accordingly, we find that the proposed class meets Rule 23(a)(2)'s commonality requirement.

### C. Rule 23(a)(3): Typicality

Rule 23(a)(3) requires that the claims of the class representative be typical of the claims of the entire class. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232

(7th Cir. 1983). Murray's claim arises from the same course of conduct as the claims of other class members—AT&T's inappropriate prescreening of his consumer credit. His claim is also based on the same legal theory as the claims of the other class members—that AT&T's practice of prescreening the credit of recipients of its promotion violates FCRA because the promotion does not contain clear and conspicuous disclosures as required of firm offers of credit nor does it comport with any of the other permissible bases for screening consumer credit under FCRA. Thus, we find that Murray has satisfied the typicality requirement of Rule 23(a)(3).

### D. Rule 23(a)(4): Adequacy

To determine if the plaintiff has met the adequacy requirement of Rule 23(a)(4), three factors must be present: "1) the proposed representative does not have antagonistic or conflicting claims with other members of the class; 2) the proposed representative has sufficient interest in the outcome of the case to ensure vigorous advocacy; and 3) its counsel is competent, qualified, experienced and able to vigorously conduct the litigation." *Tatz v. Nanophase Techs. Corp.*, 01 C 8440, 2003 WL 21372471, *8 (N.D. Ill. June 13, 2003). Murray brings an identical claim on behalf of himself and the putative class members so there is no danger of conflicting claims.

With respect to the second requirement, Cingular argues that Murray lacks the competency and the interest to vigorously pursue this action on behalf of the other class members because of his health problems—specifically, his recurrent memory loss as a result of a stroke. This Court has closely examined Murray's deposition testimony. While there is some evidence of memory loss, it is not nearly as extensive as Cingular presents it to be. For example, when asked about the effects of his memory loss, Murray cited examples such as forgetting to lock doors or return phone calls. (R. 40, Def.'s Resp. to Pl.'s Mot. for Class Cert., Ex. D, Pl.'s Dep. at

8-9.) His memory loss hardly rises to a level sufficient to disqualify him as class representative. *Compare Latona v. Carson Pirie Scott & Co.*, 96 C 2119, 1997 WL 109979, *2 (N.D. Ill. Mar. 7, 1997) (determining that plaintiff would not be an adequate class representative because she suffered from a benign tumor and a spinal condition without much chance of recovery); *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (suggesting that plaintiff's history of psychological problems made him unsuitable as class representative); *Roundtree v. Cincinnati Bell, Inc.*, 90 F.R.D. 7, 10 (S.D. Ohio 1979) (finding that plaintiff's history of physical ailments and corresponding neurosis rendered him an inadequate class representative).

Cingular also argues that Murray has abdicated all responsibility for representing the class' interests to class counsel as evidenced by his lack of knowledge and understanding of the case. It is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification. *Surowitz v. Hilton Hotels Corp. et al.*, 383 U.S. 363 (1966), unless his ignorance unduly impacts his ability to vigorously prosecute the action, *see, e.g., In re Telectronics Pacing Sys., Inc. Prod. Liab. Litig.*, 168 F.R.D. 203, 218-19 (S.D.Ohio 1996) (finding that a class representative was inadequate where he was unsure why he agreed to act as class representative, was never told what it meant to be a class representative, and had not found out how and if the cause of action impacts other individuals). "[T]he burden in demonstrating that the class representative meets this standard is not difficult." *Weiner et al. v. The Quaker Oats Co.*, 98 C 3123, 1999 WL 1011381, *8 (N.D. Ill. Sept. 30, 1999). "An understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet this standard." *Id.*

Apparently, Cingular expects Murray to have the same knowledge of the case as his

attorneys have. Cingular argues that during his deposition Murray was unable to show that he understood the basis for settling a class, nor could he recall the terms of a settlement for a case he was previously involved in, or that he was aware that his attorneys had filed certain motions in the current case. Understanding the minutia of a case is not a prerequisite to being a class representative. *See Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary is [sic] sheer sophistry.") (citations omitted). "As long as a class representative's interests do not conflict with those of the proposed class, she need only have a marginal familiarity with the facts of her case and need not understand the larger legal theories upon which her case is based." *Randle v. GC Servs., L.P.*, 181 F.R.D. 602, 604 (N.D. Ill. 1998). The deposition testimony illustrates that Murray meets the standard of knowledge required by Rule 23(a). He understands the basic facts underlying the case– the receipt of the promotion by AT&T and the potential FCRA liability. (R.40, Def.'s Resp. to Pl.'s Mot. for Class Cert., Ex. D at 44-48.) He also has general knowledge about what is required of the class representative because he has served in

this capacity on numerous occasions.[4] (*Id.* at 50-53.) In addition, Cingular has not alleged that Murray has failed to comply with his obligations as class representative or that he has refused to participate in discovery. Accordingly, we find that Murray is an adequate class representative.

Finally, Cingular argues that Edelman Combs, the law firm handling this action, has failed to adequately represent the interests of the class. This allegation stems from a motion to reassign filed by Edelman Combs to consolidate six separate FCRA actions pending in this district into one case. Cingular argues that because each case involved a different defendant and a different solicitation, class counsel disregarded the interests of class members in its attempt to lump together cases that necessarily have different merits and interests at stake.

We do not find this argument compelling. It is within an attorney's discretion to decide how to litigate a case absent the commission of any egregious or unethical behavior. *See, for example, Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 853 (U.S. 1999) (noting that class counsel who represent a different class against the same defendant or who engage in side settlements have an impermissible conflict of interest). Edelman Combs' motion to reassign was not behavior that illustrates a conscious disregard for the interests of the class. Edelman Combs is

---

[4]Murray has been the class representative in a plethora of lawsuit suits: *Murray v. Indymac Bank, F.S.B.*, 04 C 7669 (Der-Yeghiayan, J.); *Murray v. AmeriQuest Mortgage*, 05 C 1218 (Andersen, J.); *Murray v. ELOAN, Inc.*, 05 CV 1219 (Shadur, J.); *Murray v. Household Bank*, 05 C 1227 (Gettleman, J.); *Murray v. Cross Country Bank*, 05 C 1252 (Zagel, J.); *Murray v. Finance America*, 05 C 1255 (St. Eve, J.); *Murray v. First Premiere Bank*, 05 C 1873 (Bucklo, J.); *Murray v. American International Group*, 05 C 3881 (St. Eve, J.); and *Murray v. Cingular Wireless II*, 05 C 1334 (Manning, J.). Most of these cases are still pending. *Household Bank, Cross Country Bank,* and *Cingular Wireless II* were dismissed because the cases were filed after amendments to FCRA eliminated the private right of action under section 1681m(d). *Indymac Bank* resulted in a class wide settlement. His wife, Nancy Murray, also has served as a class representative. *See, e.g., Murray v. Cub Shaver Imports Bradley, Inc.*, 04 C 7766 and *Murray v. Sunrise Chevrolet, Inc. et al*, 04 C 7668. In short, Murray has ample experience serving as a class representative.

extremely experienced in the field of consumer class actions and has not acted inappropriately in this litigation.[5]

Cingular further contends that Edelman Combs has abdicated responsibility for this case to one of its youngest attorneys, Thomas Soule.[6] Even if this is the case, Mr. Soule is a licensed attorney working at a law firm that has extensive experience in consumer class actions. Furthermore, Mr. Soule is handling this case with the aid of more senior attorneys at Edelman Combs. (R. 43, Pl.'s Reply at 12.) Thus, this Court finds that Murray, Edelman Combs, and Mr. Soule meet the adequacy requirement of Rule 23(a).

## II. Rule 23(b)(3) Requirements

In addition to the four requirements of Rule 23(a), a plaintiff seeking to certify a class action for monetary damages pursuant to Rule 23(b)(3) also must show that (1) common questions of fact or law predominate over questions affecting individual class members and (2) that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3).

---

[5]We are aware of Judge Der Yeghiayan's recent opinion in *Murray v. GMAC Mortgage Corp.*, 05 C 1229, 2005 U.S. Dist. LEXIS 27254 (N.D. Ill. Nov. 8, 2005) where Judge Der Yeghiayan found that the proposed class failed to meet the adequacy and superiority requirements of Rule 23. Judge Der Yeghiayan stated that the class counsel was inadequate based in part on its decision not to seek recovery for any actual damages suffered by the class. Furthermore, his decision not to certify the class was based also on the litigious nature of the named plaintiff, whom he called "a professional plaintiff" because of her participation in numerous class action lawsuits.

While the Murrays have participated in numerous class actions, we have no evidence of any improper actions by Mr. Murray or his attorneys. Nevertheless, the Court will continue to use its supervising responsibilities over this lawsuit to closely monitor these issues.

[6]Mr. Soule graduated from law school in 2003 and was admitted to the Illinois bar in 2004. (R. 40, Def.'s Resp. to Pl.'s Mot. for Class Cert. at 15.)

> In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of the trial on these issues. The court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive law, facts, procedural due process, and fundamental fairness. Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper.

*Pastor v. State Farm Mut. Auto. Ins. Co.*, 05 C 1459, 2005 WL 2453900, *5 (N.D. Ill. Sept. 30, 2005) (citation omitted).

### A. Predominance

The predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). "If individual issues predominate, then class certification is usually not a superior method for resolving the controversy, since management of such issues by a court will not be efficient." *Murry v. America's Mortg. Banc, Inc.*, 03 C 5811, 03 C 6186, 2005 WL 1323364, *3 (N.D. Ill. May 5, 2005) (*citing Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001)).

Cingular, citing *Cole v. U.S. Capital Inc.*, 389 F.3d 719 (7th Cir. 2004), argues that the question of whether the promotion represents a firm offer of credit raises individualized issues that defeat predominance and preclude class certification. In *Cole*, the Seventh Circuit stated that "a court must consider the *entire* offer and the effect of *all* material conditions that comprise the credit product in question" in determining whether an offer has value within the meaning of FCRA. 389 F.3d at 728 (emphasis in original). Cingular argues that this individualized assessment would have to be made for each class member because the "value" of the offer varies

11

among class members.[7]

*Cole* can be distinguished from the present case. First, *Cole* did not involve a motion for class certification, but a motion to dismiss under Rule 12(b)(6). The Seventh Circuit's assessment in *Cole*, therefore, may be relevant to the merits of this case, but the Court did not discuss whether differences in the value of the promotion to each class members is sufficient to deny class certification.

Second, common issues of fact and law stemming from highly generalized proof (the solicitation) predominate over any individualized assessment that may be needed. If anything, determining the value of the promotion from one class member to another is more relevant to the issue of damages. However, since the class is requesting statutory as opposed to actual damages, the existence of individual damages is not a barrier to class certification. To the extent that any individual damages may be relevant, they are not dispositive. *See Murry*, 2005 WL 1323364 at *9 (stating that "the existence of individual damages issues will not generally preclude certification") (*quoting Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-661 (7th Cir. 2004), *cert. denied*, 125 S. Ct. 877 (2005)); *see also Ciccarone v. B.J. Marchese, Inc.*, 03 CV 1660, 2004 U.S. Dist. LEXIS 26489, *18 (E.D. Pa. Dec. 14, 2004) ("While there may well be individualized differences in damages suffered by various class members, the common questions of law and fact regarding the other elements of plaintiff's claims substantially outweigh these differences."). The focal point of these proceedings will be Cingular/AT&T's alleged course of

---

[7]To receive a free wireless phone, the promotion requires consumers to activate a qualified plan that has a minimum one year service agreement, and pay any roaming, additional minutes, and long distances charges. (R.40. Def.'s Resp. to Pl.'s Mot. for Class Cert., Ex. C, AT&T Solicitation.)

conduct in depriving putative class members of their rights under the FCRA. This issue certainly predominates over any individual damages issues that might exist.

Cingular also argues that even though Murray is requesting statutory damages, Murray still has the burden of proving actual injury or harm, which cannot be resolved on a class wide basis. To receive statutory damages under FCRA, "[t]he plaintiff must only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer." *Buxton v. Equifax Credit Info. Servs.*, 02 C 6288, 2003 WL 22844245, *5 (N.D. Ill. Dec. 1, 2003). Actual damages, on the other hand, require a showing of harm. *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004). Statutory damages are an alternative remedy to actual damages, and a plaintiff cannot get both actual and statutory damages. *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 342 (N.D. Ill. 2002). Consequently, a plaintiff does not have to prove actual injury or harm in order to get statutory damages.[8] *See, e.g., Sampson v. Western Sierra Acceptance Corp.*, 03 C 1396, 2004 WL 406992, *3 (N.D. Ill. Feb. 27, 2004) ("the application of statutory damages . . . are unrelated to any actual harm suffered by Plaintiff . . .").

Cingular relies very heavily on the Seventh Circuit's recent decision in *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603 (2005), for the proposition that a plaintiff in a FCRA case has to prove actual pecuniary injury in order to establish liability. In *Ruffin-Thompkins*, however, the plaintiff had to establish actual injury as an element of his claim under

---

[8]*See also Reed v. Experian Info. Solutions. Inc.*, 321 F. Supp. 2d 1109, 1113 (N.D. Minn. 2004) (stating that if a defendant has willfully violated the act, then a plaintiff may be entitled to statutory damages without a showing of actual damages); *Ashby*, 2004 WL 2359968 at *4-5 (stating that to the extent the proposed class seeks statutory damages, their subjective understanding of the adverse actions taken against them by the defendant is irrelevant).

13

section 1681i(a)(1)(A) of the Act. That statutory provision required the plaintiff to show a causal relationship between the credit reporting agency's failure to properly investigate and correct an inaccuracy in her credit report and any loss of credit she suffered. 422 F.3d at 609; *see also Perry v. Experian Info. Solutions, Inc.*, 05 C 1578, 2005 WL 2861078, *10 (N.D. Ill. Oct. 28, 2005). Proof of actual damage is not required to state a cause of action under the provision at issue here. Murray only has to show that the prescreening of the proposed class's credit did not comport with any of the permissible purposes outlined in section 1681b. As such, actual damages are not a bar to class certification here.[9]

Lastly, Cingular argues that there are individualized issues for those class members who signed up for wireless phone service because their claims are subject to arbitration pursuant to the service agreements entered into by such individuals. This argument is moot, however, because the class definition has been narrowed to exclude these individuals, who constitute approximately 5% of the 772,000 individuals who received the mailing. (R. 43, Pl.'s Reply at 5.) Because common questions of law and fact predominate over any individualized inquiries, we find that Murray has satisfied the predominance requirement of Rule 23(b)(3).

---

[9]To find otherwise would mark a departure from standard judicial treatment of statutory damages in this context. For example, statutory and actual damages enjoy similar treatment in other federal consumer protection acts. *See, for example, Keele v. Wexler*, 95 C 3483, 1996 WL 124452, *2 (N.D. Ill. March 19, 1996) (stating that the Fair Debt Collection Practices Act does not require the plaintiff to establish actual damages in order to recover statutory damages); *Kittrell v. RRR, L.L.C.*, 280 F. Supp. 2d 517, 521 n.6 (E.D. Va. 2003) ("Courts interpreting § 1640(a)(2)(A) [of the Truth in Lending Act] specifically state that a plaintiff may recover statutory damages without proof of injury or harm.") (citation omitted); *Cook v. VFS, Inc.*, C-3-96-191, 2000 WL 33727940, *4 n.4 (S.D. Ohio Sept. 27, 2000) (stating that the Fair Debt Collection Practices Act "provides that a plaintiff may recover statutory damages, in the absence of evidence that a debt collector's actions caused actual harm . . .").

14

B.  Superiority

"A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Jackson*, 227 F.R.D. at 290. Class treatment is especially appropriate for consumer claims. *Amchem*, 531 U.S. at 625; *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001). In this case, Cingular engaged in standardized conduct that affected many consumers and an individual consumer's claim would likely be too small to vindicate through an individual suit. Therefore, a class action appears to be a superior method to resolve these claims. *Smith v. Short Term Loans, L.L.C.*, 99 C 1288, 2001 WL 127303, *14 (N.D. Ill. Feb. 14, 2001).

Cingular argues that a class action is not a superior method because the potential statutory award under FCRA is disproportionate to the harm caused. Courts have refused to certify classes where the application of statutory damages is grossly disproportionate to the harm caused because of due process concerns. *Id.* at *3; *In re Trans Union*, 211 F.R.D. at 347-52. However, the concern in those cases was the possibility that a large and disproportionate damage award would lead to the financial ruin of the defendant and this risk outweighed the benefits of the class action mechanism.[10] *See Sampson*, 2004 WL 406992 at *3 (stating that "certification should not be denied solely because of the possible financial impact on defendant," but denying certification because "consideration [of the defendant's financial status] is proper when the damage award is

---

[10]In fact, Judge Zagel, who authored the opinion in *Sampson*, later reconsidered his motion denying class certification and granted certification as to the remaining defendant. *Sampson v. Ridge Chrysler*, 03 C 1396, 2004 WL 725471 (N.D. Ill. April 1, 2004). Judge Zagel felt that the reasoning of the earlier opinion "was better applied to Western Sierra, a company that could have certainly been put out of business by a large damage award . . . [whereas] Ridge Chrysler [the remaining defendant] . . . has gone out of business and will not suffer great injury in the event of a large damage award." *Id.* at 1.

grossly disproportionate to the actual harm caused.").

FCRA provides a minimum of $100 and a maximum of $1000 in statutory damages. § 1681n(a)(1)(A). This Court is mindful, given the size of the proposed class, of the potentially significant financial impact that a successful class action could have on Cingular. Cingular has not, however, asserted that the potential damages in this case will deal a fatal financial blow to its business in the event of a loss,[11] only that a disproportionate damage award will violate its due process rights. Moreover, this Court could reduce damages in the event of any successful judgment against Cingular if necessary to comport with due process. *See Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003). As the *Parker* court noted:

> It may be that the aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions. If so, such a distortion could create a potentially enormous aggregate recovery for plaintiffs, and thus an in terrorem effect on defendants, which may induce unfair settlements. And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award.

*Id.; see also Pichler v. Unite*, 228 F.R.D. 230, 259 (E.D. Pa. 2005) (declining to hold that the possibility that the defendant could face up to seventy million in damages is sufficient to deny class certification). Reducing an unnecessarily large statutory damage award is a more palatable option than allowing defendants to commit substantive violations of the law and escape liability essentially because they have violated the rights of too many individuals, all of whom want to sue as is their right. *See Carnegie*, 376 F.3d at 661; *In re Napster Copyright Litig. Leiber v. Bertelsmann AG*, C MDL-00-1369 MHP, C 04-1671 MHP, 2005 WL 1287611, *11 (N.D. Cal.

---

[11]Murray has asserted that damage award in this case if all class members receive the minimum in statutory damages is $73,340,000. This amount represents 0.2% of Cingular's net worth or 2.1% of Cingular's cash on hand. (R. 43, Pl.'s Reply at 5-6.)

June 1, 2005)[12]; *Ashby*, 2004 WL 2359968 at *8.

Any risk that reducing the damage award would prevent each class member from recovering the amount that he would otherwise be entitled to if the suit was brought individually is remedied by Rule 23(b)(3)'s notice provisions which allow class members to opt out of the litigation and pursue their own individual suits. *See Williams v. GE Capital Auto Lease*, 94 C 7410, 1995 WL 765266, *8 (N.D. Ill. Dec. 20, 1995). In any event, if due process remains an issue and modifying the damage award is not a viable solution, then the order granting certification can always be revisited. Fed. R. Civ. P. 23(c)(1)(C). We are not prepared at this point, however, to deny class certification on these grounds.

Lastly, Cingular takes issue with the size of the putative class arguing that "a class of 772,000 individuals is anything but 'modest,'" and in fact, is "per se excessive." (R. 30, Def.'s Resp. to Pl.'s Mot. for Class Cert. at 6-7.) To accept this argument would be to ignore the twin

---

[12]The *Napster* court rejected an argument similar to the one advanced by Cingular, stating:
> While these cases [*Parker* and *Trans Union*] are doubtlessly correct to note that a punitive and grossly excessive statutory damages award violates the Due Process Clause, it is far from clear why class actions should be singled out for heightened scrutiny under such a theory. Indeed, the sum of the actual damages suffered by a class of plaintiffs will be the same regardless of whether their claims are prosecuted as a single class action or as a myriad of individual suits. In the absence of any theory to explain why the amount of statutory damages awarded would expand faster than the size of the class, the assumption that class action treatment exacerbates concerns about excessive damages awards is either a product of mathematical error or based on the assumption that defendants who injure large number of individuals are less culpable than those who spread the effects of their unlawful conduct less widely. While the former could be chalked up to the mathematical illiteracy of the legal profession, the latter rationale is clearly incompatible with the purpose of Rule 23, which is in part intended to serve as vehicle for redressing widely dispersed harm that might otherwise go uncompensated. *Id* at 39-40.

aims of the class action procedural device. "Class actions were designed 'not only to compensate victimized members of groups who are similarly situated . . . but also to deter violations of the law, especially when small individual claims are involved.'" *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 321 (N.D. Ill. 1995) (*quoting* H. Newberg, Class Actions § 4.36). Large classes often have been certified in the consumer claim context, *see id.* at 317 n.4 (certifying a class of potentially four million individuals under the FDCPA); *Clark v. Equifax et al*, Civ.A.8:00-1217-24, Civ.A.8:00-1218-24, Civ.A.8:00-1219-24, 2002 WL 2005709, *2 n.1 (D.S.C. June 26, 2002) (certifying a class that could contain anywhere from 40,000 to 1.6 million individuals under FCRA); *Shaw v. Toshiba*, 91 F. Supp. 2d 942, 954 (E.D. Tx. 2000) (certifying a settlement only class consisting of hundreds of thousands, possibly millions of individuals), and the potential class size in this case should not be a barrier to certification, *see Carnegie*, 376 F.3d at 661 ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all."). Thus, we find that Murray has met the superiority requirement of Rule 23(b)(3).

## CONCLUSION

For the reasons set forth above, Murray's motion for class certification is granted. (R. 29-1.) Pursuant to Federal Rule of Civil Procedure 23(b)(3), this Court will certify a class consisting of all persons with Illinois addresses who received the promotion from AT&T on or after November 24, 2002 and before December 14, 2004 with the exception of those individuals who signed up for AT&T wireless service.

The parties are requested to reevaluate their final settlement positions in light of the opinion prior to the Court's next status hearing on December 1, 2005 at 9:45a.m.

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** November 17, 2005