# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS MURRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 7666 |
| ) | |
| NEW CINGULAR WIRELESS ) | Judge Ruben Castillo |
| SERVICES, INC. ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Murray ("Murray") sued Defendant New Cingular Wireless Services[1] ("Cingular") claiming that Cingular, while doing business as AT&T, unlawfully accessed his credit report prior to sending him a promotion for wireless service. He alleges that Cingular's actions do not constitute a permissible basis to obtain a consumer report and violate the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (R. 30, Pl.'s Mot. for Class Cert. at 1.) Currently before this Court are Murray and Cingular's cross-motions for summary judgment. Because Murray cannot establish that Cingular acted in a willful manner, Murray's motion for summary judgment is denied and Cingular's motion for summary judgment is granted.

---

[1] AT&T Wireless Services, Inc. ("AT&T") was the original defendant in this case, but the company was subsequently acquired by Cingular, which is currently named in this litigation in lieu of AT&T. (R.36, Def.'s Answer to Pl.'s Second Am. Compl. at 1.) For purposes of clarity, we refer to Defendant as Cingular throughout this opinion.

## RELEVANT FACTS[2]

In late 2004, Cingular sent Murray a promotion stating that he was pre-approved for a free wireless phone. (R. 101-2, Pl.'s Resp. to Def's Facts ¶ 10.) The promotion contained the following disclosure: "You were selected to receive this special offer because you satisfied certain credit criteria for creditworthiness, which we have previously established. We used information obtained from a consumer-reporting agency. . . . You have the right to prohibit information contained in your credit files with this and any other consumer-reporting agency from being used with any credit transaction that is not initiated by you . . . ." (*Id.*, Ex. A, Cingular Solicitation.) Murray filed this action in November 2004, alleging that this promotion violated various provisions of the FCRA. (*Id.* ¶ 7.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party." *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999).

---

[2] These facts are derived from the parties' statements of facts filed pursuant to Local Rule 56.1(b). Unless otherwise indicated, the facts included herein are undisputed.

## LEGAL ANALYSIS

Section 1681b sets forth the limited situations in which a consumer credit agency may furnish a consumer report even though the consumer has not initiated or authorized the release. *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2005). One such situation is when a credit or insurance provider wants to extend a firm offer of credit. *Id.* A credit or insurance provider seeking to extend a firm offer of credit must also comply with the disclosure requirements of 1681m.[3] Murray argues that the Cingular promotion does not qualify as a "firm offer of credit" or meet any of the FCRA's other permissible bases for accessing a consumer's credit report. (R. 30, Pl.'s Mot. for Class Cert. at 1.) Murray further argues that even if the promotion qualifies as a firm offer of credit, the disclosure of the consumer's privacy rights in fine print on the bottom of the second page of the promotion violates the FCRA's requirement that the disclosure be "clear and conspicuous." (*Id.* at 3.) Murray alleges that Cingular willfully violated the FCRA

---

[3]Anyone who uses consumer credit information to extend a firm offer of credit also must comply with the requirements of 1681m which reads in pertinent part:

> any person who uses a consumer report . . . shall provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement that–(A) information contained in the consumer's consumer report was used in connection with the transaction; (B) the consumer received the offer of credit or insurance because the consumer satisfied the criteria for credit worthiness [creditworthiness] or insurability under which the consumer was selected for the offer; (C) if applicable, the credit or insurance may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the consumer for the offer or any applicable criteria bearing on credit worthiness or insurability or does not furnish any required collateral; (D) the consumer has a right to prohibit information contained in the consumer's file with any consumer reporting agency from being used in connection with any credit or insurance transaction that is not initiated by the consumer; and (E) the consumer may exercise the right referred to in subparagraph (D) by notifying a notification system established under section 604(e) [15 USCS § 1681b(e)].

3

and seeks statutory damages on behalf of himself and the proposed class under section 1681n. The Court will resolve each of these issues in turn.

## A. Firm Offer of Credit Under 1681b

A "firm offer of credit" is defined by the FCRA as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). To determine if Cingular's offer constitutes a firm offer of credit, we must consider "the entire offer and the effect of all the material conditions that comprise the credit product in question." *Cole*, 389 F.3d at 728. In making this determination, we must consider the amount of credit extended; whether the offer has value; whether approval was guaranteed; and the other terms of the offer, such as the rate of interest charged, the method of computing interest and the length of the repayment period. *Id.*

Murray argues that there was no offer of credit, but only an offer of a free phone.[4] While the statement "You are Pre-Approved for a FREE wireless phone" is printed in bold letters on the promotion, the mailing states that "you can get a FREE Nokia 6010 wireless phone when you activate a new line of service on a qualified calling plan." Thus, the pre-approval for the new phone is tied to activation on a qualifying Cingular monthly wireless plan and is not simply pre-approval for a free wireless phone only.

---

[4]Cingular asserts that Murray and his counsel have withheld the firm offer claim in this case and have recognized Cingular's promotion as a firm offer of credit from the outset of this litigation. However, Murray has asserted that Cingular did not make a firm offer of credit under section 1681b in both his amended complaint and his motion for summary judgment, and this Court has certified a class on this claim. Therefore, we resolve it as a part of the summary judgment motion.

Furthermore, consumers who sign up for a wireless phone plan are extended credit because they pay for service at the end of the month rather than buying the minutes in advance. The FCRA defines credit as "the right . . . to purchase property or services and defer payment therefore," section 1691a(d), and this offer falls squarely within that definition. At a minimum, a consumer must sign up for a plan that is $29.99, but this credit can extend into hundreds or thousands of dollars depending on the consumer's actual use and the plan selected, R. 101-1, Pl.'s Resp. to Def.'s Facts ¶ 11. *See Perry v. First Nat'l Bank*, 05 C 1470, 2005 U.S. Dist. LEXIS 23100, *4 (N.D. Ill. Sept. 13, 2005) (finding that the defendant extended a firm offer of credit because although the initial amount of credit was small, there was continuing credit available). Virtually 100% of the wireless phone service purchased by the consumer would be on credit. Contrary to Murray's assertions, the FCRA does not mandate that Cingular use the term "credit" in its mailing to describe its offer nor do open-ended lines of credit have to allow balances to remain unpaid in order to qualify as "credit."

We also agree with Cingular that Murray's reliance on *Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 547 (7th Cir. 2005), is misplaced. In that case, the Seventh Circuit held that a typical residential lease is not a credit transaction because the tenant pays rent to the landlord on the first of each month for the right to continue to occupy the premises for the coming month. It is, rather, a contemporaneous exchange of money for the services rendered or the products sold, not an actual deferral of payment. *Id.* In contrast, wireless customers pay for services after the actual use of the services. By definition, such a payment scheme puts Cingular at risk that the customer could default on payment which is essentially what credit is all about. *See In re Lifschultz Fast Freight*, 132 F.3d 339, 346 (7th Cir. 1997) (noting that "prudent businesspeople

5

assess the risk of default before allowing customers to pay for goods or services on credit").

In determining whether an offer has value, the Seventh Circuit stated that "neither a creditor nor a debtor considers the amount of credit in a vacuum; both must know the other terms attached to that credit to determine whether it is advantageous to extend or to accept the offer." *Cole*, 389 F.3d 728. Unlike *Cole*, where the defendant offered the plaintiff a $300 credit towards a transaction that costs thousands of dollars, a consumer might find that the offer extended by Cingular is favorable. For example, such an offer may be advantageous to a consumer who does not want to buy prepaid minutes, but instead prefers to have the flexibility of paying for service based on their actual usage. Thus, the consumer may feel that the offer has sufficient value to justify the absence of the statutory protection of his privacy. *Id.* at 726 (stating that "the statutory scheme of the Fair Credit Reporting Act makes it clear that a 'firm offer' must have sufficient value for the consumer to justify the absence to the statutory protection of his privacy").

There is also no indication, and Murray does not allege, that there is no guarantee that the offer will be honored. Murray alleges that the terms presented in the mailer were insufficient to constitute an offer capable of acceptance because many of the material terms were not spelled out in the mailing—including the fact that consumers may have to pay a deposit in order to activate service, and there is no explanation of the other charges that may be imposed such as roaming, long distance, and additional use charges. There is no indication, however, that any of the missing information made it impossible for a consumer to accept the offer. The FCRA provides that firm offers of credit may be conditioned based on information provided to the creditor after the initial written communication is sent. Section 1681a(l). Even those consumers who might be required to pay a deposit still have the option of accepting the offer. (R. 103-1, Def.'s Resp. to

Pl.'s Facts ¶ 66.) Although the mailing states that "[r]oaming, additional minute and long distance charges, and other restrictions . . . apply" without providing additional information, further explanation of these terms is not needed in order to render this an offer capable of acceptance. Consequently, there is nothing in the mailing to indicate that a consumer wishing to take Cingular up on its offer will be unable to do so.

In considering the remaining terms of the offer, the absence of an interest rate is not detrimental to Cingular's claim. In *Cole*, the precise rate of interest was not provided; however, in that case, the consumer would have to pay interest if he or she decided to accept the offer. 389 F.3d at 728. Such information is pertinent to whether the consumer will decide whether to accept the offer or not. In this case, consumers do not have to pay interest unless they make untimely payments. Unlike *Cole*, the interest rate is not material to the terms of the offer. The mailing makes it clear that consumers must pay for monthly service; therefore, there is no need to spell out an interest rate that is only applicable if the consumer pays late. It is clear that the *Cole* court was concerned that the rate of interest and the method of computing interest "may be so onerous as to deprive the offer of any depreciable value." 389 F.3d at 728. This is clearly not the case here, as the interest rate may never factor into the transaction at all. Thus, this Court finds that Cingular has extended a firm offer of credit.

**B.     Clear and Conspicuous Statement Under 1681m(d)**

Although Cingular extended a firm offer of credit, Cingular must also comply with the FCRA's requirements that all disclosures be "clear and conspicuous."[5]  *Cole*, 389 F.3d at 729.

---

[5]Recent amendments to the FCRA abolishes the private right of action under Section 1681m of the FCRA. *See Murray v. GMAC*, 434 F.3d 948, 951 (7th Cir. 2006); 15 U.S.C. § 1681m(h)(8). However, Murray filed this suit before the effective date of the amendment.

The FCRA states that any person using a consumer report to make a firm offer of credit "shall provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement" disclosing statutorily required information. 15 U.S.C. § 1681m(d); *Cole*, 389 F.3d at 729. Murray argues that Cingular's disclosures violate the FCRA's clear and conspicuous requirement because the disclosures are "approximately six-point and contain no bolding or italicization" while "the rest of the mailer uses a range of colors and font styles that emphasize the supposed benefits of the offer defendant is making." Cingular argues that the mailing draws attention to the disclosures by separating them from the remaining text and placing them on approximately one-third of the page. Furthermore, the word "DISCLOSURE" is printed in capital letters which is conspicuous within the meaning of the FCRA.

In *Cole*, the Seventh Court found that the disclosure statement at issue is "disproportionately small compared to the surrounding text," "is the smallest text on a page filled with larger type," and "does nothing to draw the reader's attention to the material." 389 F.3d at 731. The disclosure statement at issue in this case suffers from a similar ailment. The disclosure statement is in the smallest text on a page filled with larger type. Cingular argues that because DISCLOSURE is capitalized, it is set off from all of the other legal disclaimers and thus complies with the FCRA's clear and conspicuous requirement. However, it is difficult for this Court to find as a matter of law that capitalizing one word sufficiently complies with the requirements of section 1681m when the size of the text as a whole "approaches that which cannot be read with the naked eye." *Id.* at 730 n.13 (finding that defendant's disclosure is insufficient to meet the requirements of 1681m despite that defendant's use of the word "CREDIT CARD DISCLAIMER" in the same font size as the rest of the disclosure, but in all

caps). The use of the word "DISCLOSURE" heading in all capitals does little to draw the reader's attention to this material because all of the text, including the other legal disclosures, are in an extremely small font. Although Cingular has made a firm offer of credit, the Court finds that the mailing does not comply with section 1681m's requirement that disclosure be "clear and conspicuous."

C.     **Willful Noncompliance Under Section 1681n**

Under Section 1681n, a plaintiff can get statutory damages if a defendant willfully fails to comply with the FCRA. "To act willfully, a defendant must knowingly and intentionally violate [the FCRA], and it must also be conscious that [its] act impinges on the rights of others." *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005). Although this Court has found that Cingular violated section 1681m, Murray presents no evidence that Cingular knowingly and intentionally did so. All of the cases cited by Murray involve defendants who continued to act either in contravention of a court order or despite having notice that their actions are unlawful.

In this case, Cingular was not acting willfully in the face of a court order nor was it on notice that its actions might be wrongful. While the FCRA states that disclosure requirements must be "clear and conspicuous," it does not mandate specific guidelines that the disclosure must meet in terms of text size or font. Instead, the *Cole* Court has provided some guidance on this issue, but this decision still leaves room for a district court as well as credit and insurance providers to determine what constitutes a "clear and conspicuous" disclosure. 389 F.3d at 729 (stating that "[t]he FCRA does not define the term 'clear and conspicuous,' and, in fact, there is little case law interpreting the term as used in § 1681m.") In fact, the Seventh Circuit relies on

fluid concepts such as the location of the notice within the document, the type size used within the notice, and the type size in comparison to the rest of the document to determine whether a disclosure is clear and conspicuous—concepts that will vary depending on the promotion. *Id.* at 731. Although Cingular knew about its obligations under the FCRA, this Court cannot find that the mailer "obviously did not comply with the FCRA" as Murray asserts. Nor has Murray presented any other evidence that Cingular "knowingly and intentionally" violated the FCRA.

Although Murray has established that Cingular violated the FCRA's provisions that disclosures be clear and conspicuous, he has not established that he is entitled to statutory damages pursuant to section 1681n. *See Ruffin-Thompkins*, 422 F.3d at 610 (plaintiff had to show that there was an issue of material fact on both her underlying FCRA claim and her statutory damages claim in order to survive summary judgment, but because she could not prevail on one claim, the other failed as well).

## CONCLUSION

For the reasons set forth above, Murray's motion for summary judgment is denied, ( R. 89-1.), and Cingular's motion for summary judgment is granted in its entirety. (R. 85-1.) Although Cingular violated section 1681m of the FCRA, Murray has not proven that he is entitled to statutory damages under section 1681n. The clerk is directed to enter judgment for the defendants against the plaintiff class.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated:** May 22, 2006